UNITED STATES of America, Appellee,

v.

Oscar Wendell BENNETT, Appellant.

No. 81–5115.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1982.

Decided April 2, 1982.

Certiorari Denied June 1, 1982.
See 102 S.Ct. 2306.

Dean P. Gunby, Baltimore, Md. (Leslie L. Gladstone, Baltimore, Md., on brief), for appellant.

Mark H. Kolman, Asst. U. S. Atty., Towson, Md. (J. Frederick Motz, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Senior Circuit Judge, and BUTZNER and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Oscar Wendell Bennett appeals his conviction for bank robbery, bank larceny, assault during robbery and aiding and abetting in violation of 18 U.S.C. §§ 2113(a), (b), (d) and (f), and 2, contending that the trial court erred in improperly denying his request to subpoena individuals for an in-court "line up" and in not granting his motion for acquittal on the third count. He also contends there was insufficient evidence to sustain his conviction on any of the counts. We affirm.

In September 1980, the Waverly Branch of the Provident Savings Bank in Baltimore, Maryland, was robbed by three men; one held a rifle while the other two vaulted the teller counter and took $4,748.00. FBI agents obtained descriptions of the robbers from several witnesses and used photographs taken by the bank surveillance camera in their investigation. After bank tellers identified Bennett from photographs, he was arrested. Immediately after his arrest, Bennett identified himself in a bank surveillance photograph, confessed to being one of the two men who had vaulted the counter and removed the money, and named his co-defendants. He described the weapon used and the amount of money taken. Bennett does not contest the validity of his confession, but argues that the confession was not corroborated. *United States v. Hall*, 396 F.2d 841 (4th Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 248, 21 L.Ed.2d 205 (1968).

Bennett was identified at trial by a teller and the branch bank manager, although the teller had failed to identify him when shown his photograph approximately three months prior to trial, and the bank manager had previously mistakenly identified him as

the gunman rather than as one who had vaulted the counter. Bennett contends that both identifications should have been suppressed and that without them there was insufficient evidence to convict him on any of the counts. He also contends that the identification procedure was strongly suggestive because he was the only black male in the courtroom outside the jury box.

The propriety of an in-court eyewitness identification procedure is determined by the trial court in the exercise of its discretion, *United States v. Williams*, 436 F.2d 1166 (9th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971); *United States v. Ravich*, 421 F.2d 1196 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), and there is nothing in the record to suggest that the trial court in the case *sub judice* abused its discretion in allowing the introduction of the identification evidence. That evidence, the confession, and the four bank surveillance photographs constitute sufficient evidence to find Bennett guilty beyond a reasonable doubt on all counts. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Sherman*, 421 F.2d 198 (4th Cir.), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970).

Bennett contends, however, that the court erred in refusing his motion to subpoena other black males of his approximate age and appearance to be present in the courtroom during the in-court identification testimony. Six days before trial, his attorney, at the conclusion of a suppression hearing, moved, pursuant to Fed.R.Crim.P. 17(b), that he be allowed to subpoena other black males from the Baltimore city jail to be present in the courtroom for that purpose. The trial court, citing the problems involved in complying with that request, denied the motion. Bennett contends that this violates both his sixth amendment right to compulsory production of witnesses and his fifth amendment due process right. He argues that defendants who could afford to pay the fees could subpoena such individuals under Rule 17(a), whereas indigent defendants, by being required to prove that the witnesses are necessary to an adequate defense, are denied due process.

The grant or denial of a request for subpoenas under Rule 17(b) is vested in the sound discretion of the trial judge and the denial of such is not tantamount to a denial of rights guaranteed by the sixth amendment. *United States v. Sellers*, 520 F.2d 1281 (4th Cir. 1975), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). Neither rich nor poor defendants have an unfettered right to subpoenas without discretionary review by the district court. The district court may, as it did here, deny a motion for compulsory production of witnesses who could not offer relevant evidence and which the court believed would bring confusion to the trial without offering protection to a defendant not already available by the normal identification procedures.

Nor does the denial of an in-court lineup amount to a denial of due process. *United States v. Williams, supra*. Such a procedure in many instances may be desirable to ensure a fair trial, but a defendant simply does not have a right to such an arrangement whenever he requests it. *Id.; Nash v. Maryland*, 371 F.Supp. 801 (D.Md. 1973).

The third count of the indictment upon which Bennett was convicted alleged that he violated 18 U.S.C. § 2113(d), which provides:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

Bennett contends that he could not properly have been convicted of using a dangerous weapon or device since the rifle used in the robbery was found discarded in an alley outside the bank, cocked and unloaded. In *United States v. Newkirk*, 481 F.2d 881 (4th

Cir. 1973), *cert. denied*, 414 U.S. 1145, 94 S.Ct. 897, 39 L.Ed.2d 100 (1974), and *United States v. Shelton*, 465 F.2d 361 (4th Cir. 1972), we held that it was not necessary to a conviction under section 2113(d) to prove that the involved gun was loaded. Bennett argues, however, that in *Shelton* and *Newkirk* the evidence was neutral, that there was no evidence *vel non* that the gun was loaded, whereas, in the instant case, the evidence was positive that the rifle was unloaded. We find that distinction unpersuasive.

Brandishing weapons during a robbery threatens victims and bystanders alike. The same danger, apprehension, and tension are created whether the gun is loaded or unloaded. A robber might well strike a recalcitrant teller with an unloaded rifle; a guard or a passing policeman, seeing a rifle displayed, might well reflexively fire his weapon, endangering robbers and bystanders alike; a threatening weapon might well trigger precipitous action on the part of frightened or nervous bank employees or bystanders. A weapon openly exhibited by a robber during a robbery is a dangerous weapon whether loaded or unloaded, and such exhibition violates section 2113(d).

The judgment of the district court is, therefore, affirmed.

AFFIRMED.